# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF DELAWARE, INC. and RACHEL GRIER-REYNOLDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2020-0761-SG |
| STATE OF DELAWARE DEPARTMENT OF ELECTIONS and ANTHONY J. ALBENCE, State Election Commissioner | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

Date Submitted:  October 6, 2020
Date Decided:  October 9, 2020

David M. Fry, of SHAW KELLER LLP, Wilmington, Delaware; Karen Lantz, of ACLU OF DELAWARE, Wilmington, Delaware, *Attorneys for Plaintiffs League of Women Voters of Delaware, Inc. and Rachel Grier-Reynolds*.

Aaron R. Goldstein, Ilona M. Kirshon, Allison J. McCowan, and Frank N. Broujos, of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; Max B. Walton, Matthew F. Boyer, Trisha W. Hall, of CONNOLY GALLAGHER LLP, Wilmington, Delaware, *Attorneys for Defendants The State of Delaware, Department of Elections and Anthony J. Albence, State Election Commissioner*.

GLASSCOCK, Vice Chancellor

In Delaware (as in the United States in general), the people are ultimately sovereign.[1] Through the election process, their votes determine their representatives, who form the General Assembly.[2] That body has near-plenary authority to enact laws that apply to the people. If the electorate is dissatisfied with this representation and regulation of their affairs, they are free to choose new representatives at the next election. That is the social compact under which we self-govern.

The General Assembly's authority is not without limits, however. For instance, some areas have been ceded to, and preempted by, the Federal Government. And some arenas of operation are free to the people directly and beyond the reach of the General Assembly, which is constrained by our constitution, the Delaware Constitution of 1897, and particularly its Bill of Rights.[3] This limit on governmental action in the way of the exercise of fundamental freedoms is a prerequisite to the maintenance of liberty; these constitutional restraints are the sea-wall upon which waves of overweening legislation must break.

---

[1] Del. Const., Decl. of Rights, § 1 ("That all government of right originates from the people, is founded in compact only, and instituted solely for the good of the whole.").

[2] Del. Const., Decl. of Rights, § 6 ("That the right in the people to participate in the Legislature, is the foundation of liberty and of all free government, and for this end all elections ought to be free and frequent, and every freeman, having sufficient evidence of a permanent common interest with, and attachment to the community, hath a right of suffrage.").

[3] The Bill of Rights embodied in the United States Constitution, as extended to the states under the 14th Amendment, also constrains state law-makers, of course. *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) ("[T]he Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the State.").

1

I make this elementary political recitation, surely already known to the reader, because the subject of this Opinion involves precisely these issues. Delaware is in the grip of a viral epidemic. In light of that health emergency, the General Assembly has recently extended the right to vote by mail, so that citizens may vote without physical attendance at the polls.[4] This emergency legislation applies to the upcoming election; the law (the "Vote-by-Mail Statute" or the "Act") terminates in January, 2021. While this recent legislation has liberalized the opportunity to vote by mail compared to the pre-existing absentee voting regime, one restriction pertinent here remains unchanged. Votes cast by mail, to be counted, must be received by a time certain, 8 p.m. on the evening of Election Day—Tuesday, November 3, 2020. In other words, a ballot cast by mail and received by the Delaware Department of Elections *after* Election Day will be disregarded, even if postmarked *before* Election Day. To be clear, this was true for absentee ballots both before and after the enactment of the Vote-by-Mail Statute. That legislation is expected to make mailed-in ballots much more numerous, however. Two questions result. The first is whether, in enacting a deadline for receipt of mailed ballots as of Election Day itself, the General Assembly has denied a right guaranteed by our Constitution. The second is whether, even if the deadlines in the Act are facially

---

[4] 15 *Del. C.* ch. 56. *See Republican State Comm. v. Dep't of Elections*, 2020 WL 5758695 (Del. Ch. Sept. 28, 2020).

constitutional, recent upheaval in United States Postal Service (the "USPS") operations nonetheless renders the deadline unconstitutional as applied. The urgency of the matter is made clear by the social contract referenced above; the right to vote in a free and equal election is not simply a right enshrined in Delaware's Constitution; it is the fundamental right on which our democracy rests. The election is in 25 days.

The Plaintiffs are a non-profit public-interest organization and a registered Delaware voter. They challenge the constitutionality of the requirement that mailed ballots be received on or before Election Day to be counted, in light of the increased volume of mailed ballots expected and the possibility that postal delays may cause electors to become disenfranchised by circumstances those electors themselves cannot control. This burden, the Plaintiffs argue, is more likely to disenfranchise some groups of voters than others, and the law, as applied, runs afoul of two constitutional provisions. Per the Plaintiffs, it violates Article I, Section 3—a provision of the Delaware Bill of Rights—which provides that elections must be "free and equal" (the "Elections Clause"), as well as Article V, Section 2, which provides that all citizens of Delaware "shall be entitled to vote at [each] election" (the "Right to Vote Clause"). They ask me to employ equity to ensure compliance with these constitutional mandates, by extending the statutory deadlines by which

votes may be received and counted, so as to include ballots postmarked on Election Day and received up to ten days later.

The Plaintiffs may be correct that, as a matter of good governmental practice, the statutory deadlines imposed by the General Assembly for receiving valid ballots are not optimal. But that is a matter for the legislature; my role is much more limited. Statutes enjoy a presumption of constitutionality, and I may not invalidate (let alone, as sought here, rewrite) state statutes on ground of unconstitutionality unless that unconstitutionality is clear. Here, that requires a showing that the deadlines as applied interfere with the prescription of the Delaware Constitution that citizens are entitled to participate in an election that is "free and equal." The General Assembly may—indeed, by Constitutional mandate, it should[5]—provide regulatory legislation for elections. The broad power of the General Assembly to regulate does not extend to statutes that interfere with the right to vote in a free and equal election, however.

The Defendants are the state Department of Elections and the Election Commissioner. The Plaintiffs have filed a Motion for Summary Judgement. No pertinent facts are at issue, and the matter is therefore ready for decision.

---

[5] Del. Const. art. V, § 1 ("[T]he General Assembly may by law prescribe the means, methods and instruments of voting so as best to secure secrecy and the independence of the voter, preserve the freedom and purity of elections and prevent fraud, corruption and intimidation thereat."); Del. Const., Decl. of Rights, § 8 ("That for redress of grievances, and for amending and strengthening of the laws, the Legislature ought to be frequently convened.").

The Plaintiffs' position was, for me, clarified at oral argument. According to the Plaintiffs, the absentee voting requirements as they existed before this year, including the stricture that absentee ballots be received by the time polls close, were constitutional.[6] This is true even though an absentee ballot in prior elections, mailed on Election Day, was virtually certain to arrive after the close of polls, and thus be spoiled. Absentee voters were in practice required to post their ballots a few days early to ensure timely delivery by mail. This, the Plaintiffs concede, was a restriction on absentee voters' abilities to cast ballots, but was not sufficiently burdensome to violate the Elections Clause.[7] However, when the legislature expanded vote-by-mail rights this summer but kept the deadline the same, per the Plaintiffs, it violated the Constitution. That is because the Vote-by-Mail Statute will permit many more votes to be cast by mail, which means the number of late (spoiled) ballots will increase accordingly; or conversely, it means that more voters—those who take advantage of mailing their ballots—will be burdened by the need to vote a few days before the election.[8] In either view, the Plaintiffs argue, this increases the burden imposed by the deadline to the point of constitutional incompatibility. I consider this a facial challenge to the Vote-by-Mail Statute and its ballot-receipt deadline.

---

[6] Tr. of Oral Arg. 7.

[7] *Id.*

[8] *Id.* at 7, 17.

In addition, the Plaintiffs point out that the USPS has, largely since the Vote-by-Mail legislation was enacted, put in place procedures that threaten timely delivery of ballots. They point to litigation pursued against the USPS by the Defendants themselves alleging such a possibility. In light of this circumstance, not fully known to the General Assembly when the Vote-by-Mail Statute was enacted, the statutory deadlines will interfere with the constitutional right to vote, by burdening those who need to vote by mail to an extent that violates the "free and equal" Elections Clause. I consider this argument to be a challenge to the constitutionality of the legislation, as applied. The necessary remedy, per Plaintiffs, is to extend the deadline by ten days, in either case.

I find that the Vote-by-Mail Statute, in light of its Election-Day ballot deadline, is not unconstitutional on its face. At the time the Vote-by-Mail Statute was enacted, the absentee ballot deadline, which the Plaintiffs agree was constitutional with respect to the law as it then existed, already required Election-Day ballot receipt. I find nothing about the liberalization of the ability to mail ballots in the Act that created a constitutional violation. Those choosing to mail ballots have always had to vote sufficiently early to ensure delivery by Election Day. Expansion of this option does not, to my mind, render the election unfree or unequal; the Act expands voting rights by allowing voting by mail as an alternative to voting at the polls, and it imposes a minimal temporal burden on those voting by mail, just

6

as those voting in person have the burden of physically going to the polls by a time certain. The Election-Day deadline serves a state function; finality and compliance with the Constitution's vote-reporting requirements, under which the Defendants must turn voting totals over to the Prothonotary two days after the election.[9] Other considerations for setting the deadline as the Plaintiffs advocate may exist, but they involve policy, not constitutionality, and are matters for the legislature and not the Court.

The challenge to the legislation as-applied is more difficult of analysis. The Vote-by-Mail Statute in general, and its requirement that ballots be received on Election Day or be disregarded, rests on an assumption: that the USPS will continue to efficiently and reliably collect and deliver the mail. That assumption, once a given, is currently in question. The Plaintiffs make a compelling case based on *the Defendants' own pleadings in its litigation against the USPS* that there was a possibility—as of the time of the filing of this Complaint—that mail delivery delays would disenfranchise voters choosing to vote by mail.[10] That is, such voters casting ballots in good faith in light of the voting deadline may nonetheless have their ballots spoiled because the USPS fails timely delivery. Such a disenfranchisement, if

---

[9] 15 *Del. C.* § 4980(a) ("Immediately after the election, and within the 2 days immediately following the day of election, all voting materials . . . must be stored in a safe and secure place provided by the Department. While the board of canvass is conducting its canvass of the vote, all voting materials must be in the custody of the Prothonotary.").

[10] Reply Br. in Supp. of Pls.' Mot. For Summ J. ("Summ. J. Reply Br.) 10, Dkt. No. 19.

widespread, could cause the deadline, as applied, to violate the Elections Clause, particularly as it burdens those who are compelled by risk factors to vote by mail to a degree not suffered by those casting in-person ballots. As the Defendants note, however, litigation against the USPS has been fruitful. The USPS has been enjoined by several federal courts from employing practices reducing its ability to timely deliver ballots.[11] The threat of USPS non-compliance, however, remains, as the Plaintiffs point out.

The Delaware Constitution guarantees the right to vote in a free and equal election process.[12] The General Assembly set a deadline for mailed ballots that, as of the time the legislation was passed, was sufficient to comply with this mandate. The issue is whether the threat of disenfranchisement as now posed by USPS practice is such that I must change the deadline to maintain compliance with Article I, § 3. According to the Plaintiffs, this requires that all ballots mailed by Election Day and received within ten days after Election Day must be counted, and that I must impose this deadline as the minimum required by the Constitution. They are unable to point to why that deadline, as opposed to some other, is constitutionally

---

[11] *See* Transmittal Aff. of Max. B. Walton ("Walton Aff."), Exs. J, K, Dkt. No. 18 (U.S. District Court for the District of Eastern District of Pennsylvania); Walton Aff., Ex. H at 2 (U.S. District Court for the Southern District of New York); *State of New York v. Trump*, No. 1:20-sv-02340-EGS, slip op. (D.D.C. Sept. 27, 2020) (U.S. District Court for the District of Columbia); *State of Washington v. Trump*, 2020 WL 5568557 (E.D. Wash. Sept. 17, 2020) (U.S. District Court for the Eastern District of Washington).

[12] Del. Const. art. I, § 3; Del. Const. art. V, § 1.

8

mandated, however. Such a line-drawing exercise is a quintessential legislative function. Only if I find that the Election-Day deadline imposed by the General Assembly—the traditional deadline that has been imposed on absentee ballots, pre-vote-by-mail—as applied, will result in an election less than free and equal, may I invalidate the law. But the Plaintiffs have not shown—cannot show—that, on the record as it stands, it is clear, or even likely, that malfeasance or ineptitude on the part of those controlling the USPS will burden voters needing to vote by mail in a way that renders the deadline unconstitutional as applied. The Plaintiffs' concerns are not frivolous. Principles of judicial modesty, however, require I not interfere with a statute on speculative grounds—particularly so when to do so would change settled law within weeks of the election.

For these reasons, the Plaintiffs' Motion for Summary Judgment is denied, and the Defendants are entitled to a judgment as a matter of law. A more detailed explanation follows.

# I. BACKGROUND[13]

*A. The Parties*

The Plaintiffs are the League of Women Voters of Delaware, Inc. (the "LOWVD") and Rachel Grier-Reynolds.[14] The LOWVD is Delaware's state branch of the League of Women's Voters, a nonpartisan, activist, grassroots organization.[15] It has 419 members throughout the state of Delaware.[16] Ms. Grier-Reynolds is a resident of Delaware and a registered Delaware voter.[17] She "was sent an absentee ballot for the November 3, 2020 General Election via electronic delivery on September 28, 2020."[18]

The Defendants are the State of Delaware Department of Elections (the "Department") and Anthony J. Albence (collectively, the "DOE").[19] The Department is an agency of the State of Delaware.[20] Mr. Albence is the State Election Commissioner for the State of Delaware.[21]

---

[13] I base the facts for this summary judgment ruling on the parties' pleadings, together with the attachments thereto. The facts are undisputed.

[14] Pls.' Compl. for Injunctive Relief and Declaratory J. ("Compl.") ¶ 5, Dkt. No. 1; Defs.' Answering Br. in Opp'n to Pls.' Mot. For Summ. J. ("Summ. J. Answering Br.") 5, Dkt. No. 18.

[15] Compl. at ¶ 5; Summ. J. Answering Br. at 5.

[16] *Id.*

[17] Compl. at ¶ 6; Summ. J. Answering Br. at 5.

[18] Aff. of Anthony J. Albence ("Albence Aff.") ¶ 21, Dkt. No. 18.

[19] Compl. at ¶¶ 7–8; Summ. J. Answering Br. at 5.

[20] Compl. at ¶ 7; Summ. J. Answering Br. at 5.

[21] Compl. at ¶ 8; Summ. J. Answering Br. at 5.

*B. Factual Background*

As I wrote two weeks ago, in another case challenging the same statute at issue here on different grounds, "[t]he world is suffering from a pandemic, and the United States is not immune."[22] An airborne virus has killed over 200,000 Americans, normal routines have been disrupted, and the world is vastly different from how it was a mere ten months ago. Norms and rituals that we took for granted have been eliminated or gravely modified in order to preserve public health. Despite this upheaval, our democracy must continue and the elections of our state and national officials must still be held.

In April, when primaries in other states were taking place, news reports revealed that the USPS was experiencing difficulties "in timely delivering and processing vote by mail ballots. For example, in the April Wisconsin primary, the USPS received numerous complaints regarding Wisconsin's absentee ballots."[23] In May 2020, the President appointed a new Postmaster General, Louis DeJoy, who began implementing changes to USPS operations that resulted in "[n]ationwide [d]elays and [c]ontinue to [h]ave a [n]ationwide [i]mpact."[24] On June 3, 2020, The Guardian reported that "the US Postal Service is on the brink of crisis" and that the outgoing postmaster general "recently warned that without immediate support the

---

[22] *Republican State Comm. of Del.*, 2020 WL 5758695, at *1.
[23] Summ. J. Answering Br. 9 (citing Walton Aff., Ex. A).
[24] Walton Aff., Exs. D at 3, I at 8.

agency could run out of funds within the year, and in that case might need to shut down."[25]

It is against this backdrop that Delaware's state government passed House Bill 346 ("HB 346"), *i.e.*, the Vote-by-Mail Statute, which provides for mail-in voting for elections occurring before January 12, 2021.[26] Voting by mail does not require voters to mail their marked ballots back to the State—rather, it means that voters will receive a ballot by mail, just like absentee voters.[27] Voters may then either return the ballot by mail or drop it off in one of four separate drop-box locations, one or more in each county.[28] In either case, for the ballot to be counted, it must be *received* by the Department by the time polls close on Election Day—that is, 8:00 p.m. on November 3, 2020.[29]

As I explained two weeks ago,[30] HB 346 was introduced into the Delaware House of Representatives on June 12, 2020 and passed by that body a mere six days later, on June 18. It passed the Senate almost as speedily, on June 25, and was signed

---

[25] Walton Aff., Ex. D at 1–2.

[26] 15 *Del. C.* § 5601.

[27] In essence, the Vote-by-Mail Statute allows voters who would not normally qualify for absentee voting (which also occurs by mail) to vote by mail.

[28] Two of these locations are in New Castle County. One is in Sussex County, and one is in Kent County—in Dover. *Voting By Mail In Delaware*, State of Delaware Department of Elections, *at* https://elections.delaware.gov/services/voter/votebymail/index.shtml (last visited October 9, 2020).

[29] *Id.*

[30] *Republican State Comm. of Del.*, 2020 WL 5758695, at *2.

into law by Governor John Carney six days later, on July 1. All told, HB 346 became law only 19 days after its introduction into the House.

On August 21, 2020, Delaware, five other states, and the District of Columbia sued the Postmaster General in the U.S. District Court for the Eastern District of Pennsylvania for an injunction against USPS delays in delivering election mail.[31] On September 28, that court issued a nationwide injunction prohibiting the Postmaster General from continuing to implement or enforce the operational changes that the Postmaster General had previously announced.[32] The court also incorporated by reference parts of another nationwide injunction, issued on September 21, by the U.S. District Court for the Southern District of New York (the "SDNY").[33] The SDNY's decision requires the USPS to "treat all Election Mail as First-Class Mail or Priority Mail Express" to the extent that excess capacity permits.[34]

The SDNY and Eastern District of Pennsylvania are not the only federal courts to weigh in on the issue of mail delivery delays. The U.S. District Court for the Eastern District of Washington has also entered an injunction prohibiting the USPS from continuing to implement recent decisions that caused delays in mail processing

---

[31] Compl., Ex. F.
[32] Walton Aff., Exs. J, K.
[33] Walton Aff., Ex. K at 1, citing *Jones v. United States Postal Service*, No. 20 Civ. 6516 (S.D.N.Y. Sept. 25, 2020) (Marerro, J.).
[34] Walton Aff., Ex. H at 2.

and delivery.[35]  The U.S. District Court for the District of Columbia has entered an injunction to the same effect as well.[36]

*C. The Challenged Statutes*

In light of the delays in mail delivery, the Plaintiffs challenge the constitutionality of both the Vote-by-Mail Statute[37] and the Absentee Voting Statute[38] under the Delaware Constitution as they apply to the 2020 general election.[39]  Specifically, the Plaintiffs take issue with the deadline for the return of mailed ballots, whether they be authorized by the Absentee Voting Statute or the Vote-by-Mail Statute.  That deadline, found in 15 *Del. C.* §§ 5508 for absentee ballots and 5608 for votes by mail, is when "the polls close on the day of the election"[40]—*i.e.*, 8:00 p.m. on November 3, 2020.  The Plaintiffs argue that delays in mail delivery will cause some ballots to be received by the Department after the deadline—despite being postmarked before Election Day—resulting in those ballots not being counted.[41]

According to the Plaintiffs, such disenfranchisement will violate two provisions of the Delaware Constitution:  the Elections Clause found at Article I, § 3

---

[35] *State of Washington*, 2020 WL 5568557.

[36] *State of New York*, No. 1:20-sv-02340-EGS, slip op. (D.D.C. Sept. 27, 2020).

[37] 15 *Del. C.* ch. 56.

[38] 15 *Del. C.* ch. 55.

[39] Opening Br. in Supp. of Pls.' Mot. For Summ. J. ("Summ. J. Opening Br.") 10, Dkt. No. 16; s*ee generally* Compl.

[40] 15 *Del. C.* §§ 5508(b), 5608 (b).

[41] Compl., Prayer for Relief ¶ a; Compl. ¶ 59.

14

and the Right to Vote Clause found at Article V, § 2.[42] The Elections Clause provides that "[a]ll elections shall be free and equal."[43] "[T]he Elections Clause should not be interpreted in lockstep with the federal jurisprudence that has developed under the Fourteenth Amendment" because it "has independent content that is more protective of electoral rights than the federal regime."[44] The Voting Rights Clause provides that "[e]very citizen of this State" who is eligible to vote in an election "shall be entitled to vote at such election."[45] Through this clause, the Delaware Constitution, unlike the federal Constitution, "explicitly provide[s] an individual with a right to vote."[46]

### D. Procedural History

The Plaintiffs filed their Complaint, accompanied by a Motion to Expedite, on September 4, 2020. They seek declaratory judgment that the deadlines are unconstitutional under the Delaware Constitution and two permanent injunctions enforcing that declaration: one enjoining the Defendants "from failing to count the votes recorded on any ballot received by mail between 8:00 PM on November 3, 2020, and 8:00 PM on November 6, 2020"[47] and one enjoining the Defendants "from failing to count the votes recorded on any ballot received by mail between 8:00 PM

---

[42] Summ. J. Opening Br. 12, 18.
[43] Del. Const. art. I, § 3.
[44] *Young v. Red Clay Consol. Sch. Dist.*, 122 A.3d 784, 813 (Del. Ch. 2015).
[45] Del. Const. art. V, § 2.
[46] *Red Clay*, 122 A.3d at 813.
[47] Compl., Prayer for Relief ¶ b.

15

on November 6, 2020, and 8:00 PM on November 13, 2020, bearing a postmark, scan code, or other official USPS indicator that the ballot was mailed on or before November 3, 2020."[48]  In other words, the Plaintiffs would have the Defendants count any mailed-in ballots received up to three days after Election Day, regardless of whether they bear a postmark of being mailed by Election Day, unless the Defendants can prove the ballots were not mailed by that time.  Further, the Plaintiffs would have the Defendants count any mailed-in ballots that bear an Election-Day-or-sooner postmark that is received up to 10 days after Election Day.

The Plaintiffs filed a Motion for Summary Judgment on September 18, 2020.[49]  For its part, the DOE has not made a cross-motion for summary judgment, but has indicated that the matter is ripe for summary judgment on the legal issues and argues that "all [the] Plaintiffs' claims should be dismissed."[50]  Recognizing the exigency of this matter, I granted the Plaintiffs' Motion to Expedite and heard oral argument on the Plaintiffs' Motion for Summary Judgment on October 6, together with their request for final injunctive relief, and consider the matter submitted for decision as of that date.

At oral argument, it became clear that the Plaintiffs have two objections to the Vote-by-Mail Statute and the Absentee Voting Statute.  The first is a facial one

---

[48] Compl., Prayer for Relief ¶ c.
[49] Pls.' Mot. For Summ. J., Dkt. No. 15.
[50] Summ. J. Answering Br. 57.

16

against the Vote-by-Mail Statute; the Plaintiffs argue that at the time the General Assembly enacted HB 346, they were required to also change the statutory deadline in order for the Vote-by-Mail Statute to be constitutional, regardless of USPS delays.[51] The second is the as-applied challenge detailed in the Plaintiffs' Opening Brief in Support of their Motion for Summary Judgment; that challenge contends that both the Absentee Voting Statute and the Vote-by-Mail Statute are unconstitutional as applied to the unique circumstances of the 2020 general election, including potential delays in mail delivery.

"When a plaintiff seeks a permanent rather than preliminary injunction, he must demonstrate 'actual, rather than probable success on the merits.'"[52] Because I deny the Plaintiffs' Motion for Summary Judgment, that decision necessarily resolves the question of success on the merits against the Plaintiffs and moots the permanent injunction request. Accordingly, I find that the DOE is entitled to a judgment in its favor.[53]

---

[51] Tr. of Oral Arg. 10, 12.

[52] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 384 (Del. 2014), *as revised* (Nov. 10, 2014) (quoting *Draper Comm'ns, Inc. v. Del. Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985)).

[53] I informed the parties to this case in a pre-trial conference on September 2, 2020 that I intended to resolve this matter based on the record as it existed at the time the matter was submitted. No party objected. *See* Tr. of 9.2.20 Telephonic Scheduling Conference, *Republican State Comm. of Del.*, 2020 WL 5758695, C.A. No. 2020-0685, Dkt. No. 21; Ch. Ct. R. 56(h) (addressing cross-motions for summary judgment in the absence of material issues of fact as "the equivalent of a stipulation for decision on the merits based on the record submitted with the motions").

## II. ANALYSIS

Summary judgment may be granted where there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law."[54] The parties do not dispute the operative facts—that the Vote-by-Mail Statute expanded the right to mail-in ballots for this election only, that the USPS has suffered delays in delivering mail, that multiple federal courts have attempted to address those delays via injunctions aimed at prioritizing the delivery of election mail, and that the deadline for the return of marked ballots is 8:00 p.m. on November 3, 2020. Nor do the parties dispute that some voters may, in fact, mail their ballots such that they are postmarked before the deadline but are received after the deadline and are thus not counted. The only question is whether such disenfranchisement causes the deadline to violate the Delaware Constitution's guarantee of the right to vote and that all elections will be "free and equal."[55] That question, which is entirely dependent on the interpretation of the Delaware Constitution, is a question of law. Accordingly, summary judgment is appropriate.[56]

---

[54] Ch. Ct. R. 56(c).

[55] Del. Const. art. I, § 3.

[56] *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 627 (10th Cir. 1998) (interpretation of both state and federal constitutional law are "purely legal questions"); *see Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *2 (Del. Ch. Nov. 8, 2007) ("Where the dispute centers on the proper interpretation of an unambiguous contract, summary judgment is appropriate *because such interpretation is a question of law*.") (emphasis added).

18

*A. The Plaintiffs' claims are ripe.*

The Defendants first contend that the Plaintiffs' claims are not ripe "as they are based on uncertain and contingent USPS mail delays that may not occur."[57] The Plaintiffs counter that their claims are ripe, noting that the Defendants have themselves conceded this point by acknowledging that the State of Delaware has sued over mail delivery delays in federal court.[58]

In general, "Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe—*i.e.*, has 'matured to a point where judicial action is appropriate.'"[59] In other words, ripeness means that courts "do not render advisory or hypothetical opinions."[60] "A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court 'in postponing review until the question arises in some more concrete and final form.'"[61] To defeat a defense of unripeness, the "Plaintiffs must allege that 'present harms will flow from the threat of future action.'"[62] Further, "the probability of that future event occurring [must be] real and

---

[57] Summ. J. Answering Br. 30.

[58] Summ. J. Reply Br. 9–11.

[59] *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 480 (Del. 1989)).

[60] *Id.*

[61] *Id.* (quoting *Stroud*, 552 A.2d at 480).

[62] *Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *7 (Del. Ch. Oct. 11, 2006) (quoting *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463, 1466 (3d Cir.1994)).

substantial, [and] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[63]

I find that, with the Plaintiffs' clarification at oral argument that they are also alleging a facial challenge to HB 346, the ripeness defense is no longer at issue. The Plaintiffs maintain that there is a current and ongoing constitutional violation, affecting the institutional Plaintiff and its constituent voters. They have adequately alleged harm that will flow from the threat of the enforcement of the statutory deadlines for counting ballots. The probability of ballots going uncounted is sufficiently immediate, real, and cognizable that courts in at least three of our sister states have addressed the issue, and in fact extended the ballot-receipt deadline.[64] I also note that, as a practical matter, it is much preferable, to the extent possible, to resolve such disputes before, rather than after, the election. The Plaintiffs' claims are ripe for adjudication.

---

[63] *Anonymous v. State*, 2000 WL 739252, at *4 (Del. Ch. June 1, 2000).

[64] *See Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 5627186 (W.D. Wis. Sept. 21, 2020); *Mich. Alliance for Retired Americans v. Benson*, C.A. No. 20-000108-MM, (Mich. Ct. Cl. Sept. 18, 2020); *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644 (Pa. Sept. 17, 2020). The U.S. District Court for the Northern District of Georgia, Atlanta Division, had also ruled that the statutory deadline was severely burdensome on the right to vote and enjoined the application of the deadline. *New Ga. Project v. Raffensperger*, 2020 WL 5200930, at *24. (N.D.Ga. Aug. 31, 2020). But that injunction was stayed on appeal by the U.S. Court of Appeals for the Eleventh Circuit, which found that the burden of an Election-Day deadline on returns of ballots was not "severe" under the *Burdick* test. *New Ga. Project v. Raffensperger*, 2020 WL 5877588, at *3 (11th Cir. Oct. 2, 2020); *see* Section II.C.1. *infra*.

*B. The Defendants' Contention that the Plaintiffs Lack Standing and that their Claims are Moot*

In addition to their ripeness defense, the Defendants argue that neither the LOWVD nor Ms. Grier-Reynolds have suffered or will suffer "any concrete or particularized harm" and thus they lack standing to challenge the statutory deadline for return of mailed ballots.[65] As I noted in *Republican State Committee of Delaware*, in which the Defendants also raised a standing defense, standing is "not [a] frivolous issue[]."[66] "A party without standing may not invoke the review of a statute by this Court."[67]

But the resolution of those issues in this case would require the creation of a record. That record would need to address whether the LOWVD would suffer a harm distinct from the public or otherwise can demonstrate institutional standing. Time is of the essence here. The general election is less than a month away. If the Defendants are incorrect, and if the statutory deadlines are unconstitutional, the Plaintiffs face irreparable harm. Accordingly, in this unusual circumstance and for purposes of this decision only, I assume without deciding that the Plaintiffs have standing to proceed.[68]

---

[65] Summ. J. Answering Br. 20.

[66] *Republican State Comm. v. Dep't of Elections*, 2020 WL 5758695, at *4 (Del. Ch. Sept. 28, 2020).

[67] *Id.*

[68] *Id.*

21

The Defendants also contend that the Plaintiffs' concerns about mail delivery delays have been rendered moot by the injunctions issued by the four federal courts mentioned above. While I would, in any case, find that unpersuasive (given the factual record), the Plaintiffs' clarification that they consider the ballot receipt deadline in the Vote-by-Mail Statute unconstitutional on its face[69] eliminates the mootness argument.

*C. Constitutionality of the Statutory Deadlines*

"Enactments of the Delaware General Assembly are presumed to be constitutional."[70] This presumption can be defeated by "clear and convincing evidence of unconstitutionality."[71] Thus, for the Plaintiffs to succeed on their facial challenge, they must provide clear and convincing evidence that there is no set of facts under which the Vote-by-Mail Statute could be constitutional.[72] To show that the statutory deadlines in 15 *Del. C.* §§ 5508 and 5608 are unconstitutional as applied to this year's general election, the Plaintiffs must show exigencies that convince the Court that application of the deadline would impermissibly violate the right to vote and the right to free and equal elections as guaranteed by our Constitution.

---

[69] To be accurate, the Plaintiffs' argument clarified, in my mind, that their challenge was facial. The Plaintiffs did not explicitly state that their challenge was facial.

[70] *Hoover v. State*, 958 A.2d 816, 821 (Del. 2008).

[71] *Sierra v. Dep't of Servs. for Children, Youth & their Families*, 2020 WL 4745278, at *8 (Del. Aug. 17, 2020) (citing *Monceaux v. State*, 51 A.3d 474, 477 (Del. 2012)).

[72] *U.S. v. Salerno*, 481 U.S. 739, 745 (1987) (describing a facial challenge as one that requires the challenger to "establish that no set of circumstances exists under which the [statute] would be valid").

Thus, for the Plaintiffs to succeed on the merits, they must show clearly that the statutory deadlines in 15 *Del. C.* §§ 5508 and 5608 are unconstitutional as applied, or that 15 *Del. C.* ch. 56 is unconstitutional on its face. I find that they have not done so.

### 1. The Vote-by-Mail Statute is facially constitutional.

The Plaintiffs' contend that the Act is unconstitutional because it provides for voting by mail in much larger numbers than was allowed under only the Absentee Voting Statute; that expansion, the Plaintiffs argue, will increase the amount of ballots arriving after Election Day—ballots which will therefore be uncounted—to an amount that the Delaware Constitution will not countenance.[73] Although clearly this disenfranchisement could be avoided by mail-in-voters requesting and mailing their marked ballots earlier rather than later, the very burden of requiring that voters do so, according to the Plaintiffs, unconstitutionally infringes their right to vote.[74] Accordingly, per the Plaintiffs, the General Assembly violated the Constitution when it expanded the right to vote by mail but failed to extend the deadline for receipt of ballots.

---

[73] Tr. of Oral Arg. 10.
[74] *Id.* at 17.

23

I find this contention unpersuasive. All voting procedures, including the ones in effect before the pandemic, place some burdens on voting. Indeed, voting in person is itself burdensome to many; it requires voters to be at the polling place by 8:00 p.m. on Election Day—which is a work day and not a national holiday. The burdens of voting in person include finding a method to transport oneself to a polling place during the voter's off hours on Election Day and waiting in line to vote, by a deadline set by statute. These are not insignificant burdens—and yet they are countenanced by Delaware's Constitution as incidental to exercising the right to vote; the Plaintiffs do not contend otherwise.

The expanded right to mail ballots is more than simply a convenience. The General Assembly has determined that liberalizing the ability to vote by mail, in light of the COVID epidemic, is necessary to the continuity of government itself.[75] However, the burdens alleged here—requesting, completing, and mailing a ballot a few days before Election Day to ensure timely receipt—are not clearly more onerous than those pertaining to in-person voting, pre-COVID. To be clear, in passing HB 346, the General Assembly *expanded* the number of methods Delawareans had to vote. The legislature did not eliminate in-person or absentee voting and replace it

---

[75] H.B. 346, 150th Gen. Assemb., Reg. Sess., 2020 Del. Laws 245 ("It is the judgment of the General Assembly that due to the highly contagious nature of COVID–19 and the need to protect the electors and polling workers in this State from infection of COVID–19, voting by mail is necessary and proper for [e]nsuring the continuity of governmental operations, and to conform to the requirements of Article V, § 4A, would be impracticable.").

with mail-in voting; those options remain open to Delawareans, who now also have the option of choosing mail-in voting. Those choosing the latter may themselves deposit their ballots at a drop box at any time through Election Day, or find another to drop the ballot for them. Or, if they choose, they may mail the ballot in, provided they do so early enough for it to be counted.

The General Assembly has made voting easier, not harder. That some people will be disenfranchised because they spoil mail-in ballots in a variety of ways is an artifact of the method—it is, I suspect, by its nature more subject to error and less subject to assistance than voting at a polling place. Setting the ballot-receipt date later, rather than earlier, would doubtless decrease the number of ballots spoiled by untimeliness. But the Plaintiffs concede there must be a deadline; they simply disagree with the General Assembly as to when that deadline should be. Avoiding untimeliness requires a voter to be aware of the fact that delivery-by-mail is not instantaneous, and post the ballot accordingly. That additional burden, incidental to the expansion of voting rights in the Vote-by-Mail Statute, is not clearly incompatible with the Elections Clause, and therefore the arguments for drawing the deadline ten days after the election are a matter of policy, not the Delaware Constitution.

In their briefs,[76] the Plaintiffs suggest that whether the statutory deadline violates the Right to Vote and Elections Clauses of the Delaware Constitution is subject to the federal test set forth in *Burdick v. Takushi*.[77]  That case provides that the "rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens" the rights at issue.[78]  If the "rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'"[79]  But if the "state election law provision imposes only 'reasonable nondiscriminatory restrictions' . . . , 'the State's important regulatory interests are generally sufficient to justify' the restrictions."[80]

The election law at issue here is a statutory deadline for absentee and mail-in ballots.  The Plaintiffs contend that it impinges the voting rights provided for and guaranteed in the Delaware Constitution.  Those rights are more explicit, and, I believe, more robust than those in the U. S. Constitution.  Nonetheless, the *Burdick* analysis is an appropriate framework to analyze whether a particular restriction

---

[76] The Plaintiffs disavowed the *Burdick* test during oral argument.  Tr. of Oral Arg. 21.  However, it is clear to me—and conceded by the parties—that *some* level of burden on a particular method of voting is allowable without violating the Delaware Constitution.  The question is therefore not whether any burden has been imposed, but whether that burden is unreasonable.  That determination necessarily involves some sort of balancing test, similar to the framework of *Burdick*.

[77] 504 U.S. 428 (1992); Summ. J. Opening Br. at 18–20.

[78] *Burdick*, 504 U.S. at 434.

[79] *Id.* (citing *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

[80] *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (2020)).

works an impermissible burden on voting, keeping the guarantee of free and equal voting in mind. The question here is where to draw the deadline for ballot receipt in the current circumstances. The interest in finality and certainty as to the end of the voting period, and the resulting need for a deadline, is apparent; the Plaintiffs concede this, given that their requested remedy is not the *absence* of a deadline but a *delay* in the deadline. For the deadline to fail the *Burdick* test, then, it must be an *unreasonable* deadline. For the reasons addressed above, I find that it is not.

The General Assembly chose to apply the deadline already pertaining to absentee ballots to the Vote-by-Mail Statute. The Defendants suggest the reasons for doing so relate to the constitutional requirement that a ballot count be remitted to the Prothonotary two days post-election, as well as the general need for finality. The Plaintiffs have failed to demonstrate that this deadline is so burdensome, on its face, as to deprive voters of a constitutional exercise of the right to vote in a free and equal election.

### 2. The statutory deadlines in §§ 5508 and 5608 are constitutional as-applied to the 2020 general election.

The Plaintiffs' as-applied challenge requires a different analysis. A facial challenge to the constitutionality of legislation invokes broad judicial deference; if a law can be applied in a way consistent with Constitutional strictures, it will be

27

upheld.[81]  An at-issue challenge, conversely, is based on exigencies; it asks the Court to withhold enforcement of a statute on the ground that existing circumstances will render its enforcement against the plaintiff unconstitutional.  This can be true regardless of whether the law in question is facially constitutional.[82]  In analogous cases involving extensions of deadlines for voting in-person, courts have sometimes employed equity to permit late ballots from voters who were otherwise disenfranchised by a combination of the deadline and other circumstances through no fault of their own.[83]

The election law at issue here is the statutory deadline provided for at 15 *Del. C.* §§ 5508 and 5608 for absentee and mail-in ballots.  The Plaintiffs argue that even if—as I have found above—the deadline is facially constitutional, as applied it will

---

[81] *State v. Hobson*, 83 A.2d 846, 851 (Del. 1951) ("Even if the Delaware statute, read literally, were susceptible of the construction which defendant urges, it would be our duty to reject that construction, since we are required, as between two possible constructions, to adopt the one which will uphold its validity.").

[82] *R.M. v. V.H.*, 2006 WL 1389864, at *8 (Del. Fam. Ct. Jan. 19, 2006) ("A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. A facial challenge is the most difficult to bring successfully because the challenger must establish that there is no set of circumstances under which the statute would be valid.").

[83] *See St. Louis Cty. Bd. of Election Comm'rs v. McShane*, 492 S.W.3d 177, 183–85 (Mo. Ct. App. 2016) (issuing writ of mandamus, with the support of both political parties, compelling election board to hold polling places open for an additional two hours because several hundred voters had been turned away over several hours due to a lack of ballots); *People ex rel. Woodside v. Bd. of Inspectors of Election of 56th Election Dist.*, 389 N.Y.S.2d 242, 245–47 (N.Y. Sup. Ct. 1976) (holding that, where hundreds of valid voter registrations had been lost, requiring those people to obtain court orders confirming their eligibility to vote, election officials were required to accept their votes after closing time); *see also Lake v. State Bd. of Elections*, 798 F. Supp. 1199, 1202–03, 1207–08 (M.D.N.C. 1992) (three-judge court) (holding that the state court's decision to extend voting hours at all polling places in two counties in a statewide election due to voting machine malfunctions and long lines did not violate due process).

28

violate the Constitution. That is because, according to the Plaintiffs—citing the Defendants own briefing in their suit against the USPS—the latter organization is imposing new procedures that will slow the delivery of mail to the point that even voters mailing ballots the usual few days before the deadline may be disenfranchised by the deadline. The Defendants, I note, argued in their suit against the USPS that the Postmaster General, Louis DeJoy, had undertaken "unlawful actions designed to undermine the effective operation of" the USPS and that "several of [the] USPS's recent operational and policy changes . . . have led to significant delays in mail delivery across the country." [84] This could impose a burden incompatible with the right to vote in a free and equal election. The General Assembly has found that in the current epidemic, the ability to vote by mail is necessary to the continuity of government.[85] Voters who need to exercise their voting right by mailing a ballot need to post sufficiently early to allow normal mail delivery by the deadline. Even voters doing this, however, would be disenfranchised in this scenario where the USPS is no longer able to timely deliver mail.

The burden just expressed is not *de minimus*. Neither, however, is the probability of its occurrence clear. As the Defendants point out, they (with others) were successful in obtaining a nationwide injunction prohibiting Mr. DeJoy from

---

[84] Compl., Ex. F at ¶¶ 1, 2.
[85] H.B. 346, 150th Gen. Assemb., Reg. Sess., 2020 Del. Laws 245.

29

continuing to implement or enforce the operational changes that were responsible for the delays.[86] That injunction incorporated by reference parts of another nationwide injunction issued by the SDNY, which requires the USPS to "treat all Election Mail as First-Class Mail or Priority Mail Express" to the extent that excess capacity permits.[87] Two other federal courts have entered similar injunctions, prohibiting Mr. DeJoy from implementing his policy and operational changes aimed at reducing operation costs but having the effect of delaying mail delivery.[88]

I do not find that the deadlines are unconstitutional as applied. I am compelled to this result by the current state of the record. The USPS had changed its procedures in a way that led to delays that could make the deadline's burden on vote-by-mail voters unreasonable, but the Defendants and others similarly interested have obtained injunctions against the USPS designed to eliminate this threat of undue delay. Nothing in the record now convinces me that voters availing themselves of the expanded right to mail ballots will be burdened beyond the usual requirement that they post their ballots at least a few days prior to the deadline. On that record, I may not invalidate a statute and craft one of my own. The policy determination of the General Assembly—that mailed ballots must be received by Election Day to count—is not unconstitutional under the facts as they exist.

---

[86] Walton Aff., Exs. J, K.
[87] Walton Aff., Ex. H at 2.
[88] *See* n.33, n.34 *supra*.

30

What if those facts should change? What if the USPS does not deliver mail in the normal course, or some other disaster intervenes to disenfranchise electors attempting to avail themselves of the new ability to vote by mail? I have pointed out above that these matters are far better decided pre-election than post-election. Nevertheless, in a case as just described, I have been assured by the Defendants that all mailed ballots received post-deadline will be preserved.[89] In the event that such circumstsances interfere with the constitutional right to a free and equal election, the matter is not beyond remedy.[90]

## III. CONCLUSION

The Plaintiffs' facial challenge to the mailed-ballot deadline must fail. The legislature has made a determination—in light of the pandemic that is sweeping our nation and in light of the constitutional and practical mandates that the election season must have an end—that mail-in voting should be extended to all eligible Delaware voters, and that the deadline should mirror that of the existing Absentee Ballot Statute: 8:00 p.m. on Election Day. It has also determined, by choosing not

---

[89] Tr. of Oral Arg.31–32. The requirement that untimely-received ballots be preserved until February is found in the same statutory provisions as the deadlines at issue here. Specifically, 15 *Del. C.* §§ 5508 and 5608 both provide that "[t]he Department shall retain unopened any ballot envelope it receives after the polls close on the day of the election until the last day of February next after the election, or longer if directed by proper authority or required to do so by federal law."

[90] This is not to say that I am reserving decision on the constitutionality of the statutory deadlines. I am not. The deadlines are constitutional. I am merely leaving open the possibility—in case a constitutional violation *does* occur under the facts as they appear after the election—that a remedy for a *proven* constitutional violation may be had post-election.

to amend the Absentee Ballot Statute's deadline and by modeling the Vote-by-Mail Statute's deadline after that of the Absentee Ballot Statute, that a deadline of 8:00 p.m. on Election Day will not so burden voters electing to mail their ballot as to be unconstitutional under the Delaware Constitution. I do not find those determinations clearly erroneous, and the facial challenge must fail. The Plaintiffs' as-applied challenge, based on speculation of USPS misfeasance, must similarly fail, because the state of the record does not indicate that the burden of the deadline is thereby increased.

Because I have determined that the Plaintiffs cannot succeed on the merits, their request for injunctive relief is also denied. The Defendants are entitled to a judgment in their favor. The parties should submit an appropriate form of order.